**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KENNY KING, JAMES WHITE, and HODARI WORLDWIDE LOGISTICS, INC., individually and on behalf of others similarly situated, | CLASS ACTION COMPLAINT |
| Plaintiff, | |
| v. | JURY DEMANDED |
| JDM EXPEDITE INC., | |
| Defendant. | |

**CLASS ACTION COMPLAINT**

Plaintiffs Kenny King, James White, and Hodari Worldwide Logistics, Inc. ("Hodari Worldwide Logistics") bring this case individually and on behalf of others similarly situated against Defendant JDM Expedite Inc. ("JDM") for breach of contract and violations of the Truth in Leasing Act ("TILA"), 49 U.S.C. § 14704(a)(2). Plaintiffs bring their claims as a putative class action.

**NATURE OF THE CASE**

1. Defendant engaged in a widespread scheme to violate its lease agreements with owner-operators in order to steal part of owner-operators' promised compensation. Defendant agreed to pay Plaintiffs and other owner-operators a certain percentage of the revenue for each load they hauled for Defendant and then lied to Plaintiffs about the actual price of the load. Defendant then refused to provide documentation of the load price to further conceal its scheme.

2. Defendant JDM is a federally licensed motor carrier that enters into contracts with owner-operators to use their semi-trucks, with or without a driver, to transport goods under its motor carrier license. Plaintiffs and other drivers worked for Defendant as owner-operators.

## Parties

3. Plaintiff Kenny King, a Florida resident, is an interstate truck driver. He has a CDL Class A license and worked for Defendant as an owner-operator from September to November 2022. During all times that King worked for Defendant, he was not an agent of Defendant for the purposes of the TILA.

4. Plaintiff James White, a Mississippi resident, is an interstate truck driver. He has a CDL Class A license and worked for Defendant as an owner-operator from September 2020 to August 2022. During all times that White worked for Defendant, he was not an agent of Defendant for the purposes of the TILA.

5. Plaintiff Hodari Worldwide Logistics, Inc. is an Illinois corporation owned by Abdal Hakim Ali. It contracted with JDM to operate a semitruck in interstate commerce from October 2021 to July 2022. During all times that Hodari Worldwide Logistics worked for Defendant, it was not an agent of Defendant for purposes of the TILA.

6. Defendant JDM is an Illinois business corporation with principal place of business in Lyons, Illinois. JDM is a federally regulated motor carrier providing transportation services to the shipping public and is an "authorized carrier" within the meaning of 49 C.F.R. § 376.2(a).

7. JDM employs or contracts with drivers to transport its customers' freight in interstate commerce. As part of its business, JDM leases equipment from other related entities or owner-operators.

8.       JDM is registered under MC-811043, US DOT # 2365543. According to the SAFER – FMCSA management information systems, JDM reported that it operates 209 power units (semi-trucks) and has 264 drivers. Further, JDM reported that it ran approximately 23.8 million miles in 2021.

## Jurisdiction and Venue

9.       The Court has subject matter jurisdiction over this action pursuant to the TILA, 49 U.S.C. § 14704 and 28 U.S.C. § 1331.

10.      Venue is proper in this jurisdiction under 18 U.S.C. § 1965(a) and 28 U.S.C. § 1391(a), (b), and (c) because a substantial part of the events and omissions giving rise to this action occurred in the Northern District of Illinois.

## TILA Legal Standards

11.      The TILA and its implementing regulations govern the terms and conditions under which owner-operator truckers lease equipment to federally authorized motor carriers that transport freight in interstate commerce. *See* 49 U.S.C. § 14102(a); 49 C.F.R. § 376.12. TILA regulations require the motor carrier's equipment leases to disclose, in writing, the amount that the motor carrier will pay the owner-operator as compensation. 49 C.F.R. § 376.12(d). The regulations also require that those leases disclose the details of any escrow withholdings and charge back items. *Id*. at § 376.12 (h), (k). When the lessor's revenue is based on a percentage of the gross revenue for a shipment, the lease must specify that the carrier will provide the lessor a copy of the rated freight bill, or any other documentation actually used for a shipment containing the same information, before or at the time of settlement. *Id*. at 376.12(g).

12.      Finally, the regulations require the motor carrier to adhere to the terms of the lease. *Id.* § 376.12 (introductory paragraph).

**Common Facts**

13.     Plaintiffs entered into an equipment lease (hereinafter "Lease Agreement") with Defendant to transport goods in interstate commerce under Defendant's carrier license. The Lease was substantively identical to the one attached hereto as Exhibit A, though JDM offered drivers varying percentages of the revenue rate as compensation. See Ex. A -Lease Agreement.

14.     The Lease Agreement constituted a "lease" under the TILA. 49 C.F.R. §376.2(e).

15.     Under the Lease Agreement, Defendant agreed to pay Plaintiffs a percentage of the gross revenue payable for each load that Plaintiffs hauled with their equipment under Defendant's carrier license. Ex. A, Lease Agreement, Amendment A.

16.     TILA regulations required Defendant to make certain disclosures to Plaintiffs regarding their compensation and deductions from their pay. 49 C.F.R. § 376.12. Specifically, the regulations required Defendant to provide Plaintiffs with the original brokers' rate confirmation sheets for each load they hauled at or before the time of settlement (pay). *Id.* at § 376.12(g).

17.     Defendant refused to provide Plaintiffs with rate confirmation sheets at or before the time of settlement. Instead, Defendant communicated the price of the load directly to Plaintiffs by phone, text, or e-mail.

18.     Defendant provided Plaintiff Hodari Worldwide Logistics a document in October 2021, which stated that the company's policy was to not provide rate confirmation sheets to any of its drivers.

19.     On August 31, 2022, Plaintiff Hodari Worldwide Logistics, through counsel, requested Defendant to send him all of his rate confirmation sheets, as required by 49 C.F.R. §376.12(g). To date, Defendant has refused to produce them.

20. Defendant lied and under-reported the actual load rates (or prices) in its communications with Plaintiffs and in Plaintiffs' settlement (pay) statements.

21. For example, on January 26, 2022, Defendant informed White that a load from Wisconsin to Oklahoma paid $3,300. However, a freight broker informed White that the load actually paid $3,800. Defendant then paid White 85% of the lower amount rather than paying him 85% of the actual load price.

22. As another example, on March 18, 2022, Defendant informed White that a load from Missouri to Alabama paid $2,000. However, a freight broker informed White that the load actually paid $2,700. Defendant then paid White 85% of the lower amount rather than paying him 85% of the actual load price.

23. During the first two months of working for Defendant, Hodari Worldwide Logistics – through its owner Abd'al Hakim Ali – spoke with a freight broker and asked about the price of a load that Ali was hauling. The freight broker quoted a price that was $200-$300 more than the price that Defendant quoted Hodari Worldwide Logistics. Defendant then paid Hodari Worldwide Logistics 85% of the lower amount rather than paying it 85% of the actual load price.

24. Defendant violated the TILA rules by not adhering to the terms of its lease agreements with Plaintiffs. 49 C.F.R. § 376.12 (intro paragraph).

25. During the past five years alone, Defendant has contracted with at least one-hundred lessor/owner-operators to provide transportation service for its clients.

26. On information and belief, Defendant entered substantively identical lease agreements with at least one-hundred drivers promising to pay them a fixed percentage of the load price.

27. On information and belief, Defendant had a company policy of under-reporting the price of the load to all owner-operators with whom it contracted and paying them a fixed percentage of the lower, under-reported rate.

28. Defendant deducted money from Plaintiffs' pay for an escrow account. Defendant took $2,000 from White's pay for an escrow account but never repaid it to him after he stopped working for JDM in August 2022.

29. Defendant deducted money from Hodari Worldwide Logistics' pay for a maintenance account, even though the equipment lease did not permit this deduction.

30. JDM never paid interest on any of the escrow deductions that it took from Plaintiffs' pay.

## Class Allegations

31. Plaintiffs brings this action on behalf of themselves and a class of similarly situated individuals or entities, defined as:

> All individuals or entities that contracted with Defendant as lessors/owner operators from November 15, 2012 to the present and that were paid based on a percentage of the load rate.

32. The Class defined above satisfies the requirements of Rules 23(a) and 23(g).

   a. **Numerosity.** The Class is so numerous that joinder of all members is impracticable, and the disposition of their claims in a class action will provide substantial benefits to both the parties and the Court. Since 2012, Defendant has contracted with over 100 owner-operator drivers and paid them based on a percentage of the load.

6

b. **Commonality.** Common questions of law and fact predominate over individual issues affecting only individual class members. Questions of law and fact common to the Class include, among others, the following:

   i. Whether Defendant violated the TILA by refusing to provide owner-operators with the original brokers' rate confirmation sheets at or before the time of settlement;

   ii. Whether Defendant breached the terms of their agreements with owner-operator drivers by paying them less than the promised percentage of gross receipts on each load;

   iii. Whether Defendant refused to repay escrow deposits in violation of the TILA;

   iv. Whether Defendants failed to pay interest on escrow deposits.

c. **Typicality**. Plaintiffs' claims are typical of the Class's claims because Plaintiffs and all Class members were injured through Defendant's uniform misconduct. The claims of Plaintiffs and the Class arise from the same operative facts and are based upon the same legal theories. There are no defenses unique to Plaintiffs.

d. **Adequacy.** Plaintiffs will fairly and adequately protect and represent the interests the Class because (i) Plaintiffs have retained competent and experienced counsel that have the time, experience, and resources to litigate this case; (ii) Plaintiffs are a member of the Class, their claims are typical of the Class, and they have suffered substantially similar injuries to those suffered by the rest of the Class; (iii) Plaintiffs' interest in obtaining monetary relief for the Class are consistent with and not antagonistic to the interests of the Class.

33. The proposed Class satisfies the requirements of Fed. R. Civ. P. 23(b)(3).

   a. **Predominance**. Common questions predominate over any individual questions because the important and prevalent issues in this case concern Defendant's conduct and its effects, which are common to the Class. Individual issues are minor and may be nothing more than damages calculations pursuant to a formula.

   b. **Superiority**. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages suffered by Plaintiffs and the Class, while collectively substantial, are relatively small per Class member compared to the burden and expense required to individually litigate their claims. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Both liability and damages can be determined in one class-wide proceeding.

## Count I - Breach of Contract

34. Plaintiffs incorporate all prior allegations as if fully stated herein.

35. Defendant entered into Lease Agreements with Plaintiffs and the Class agreeing to pay them a fixed percentage of the gross revenue of the loads they hauled for Defendant.

36. On information and belief, Defendant entered into a substantially similar Lease Agreement with all the Class members.

37. Plaintiffs and the Class members substantially performed all their obligations under their contracts with the Defendant.

38. Defendant breached its contracts with Plaintiffs and the Class members by not paying them the correct percentage of the real rate that brokers or shippers paid to Defendant.

39. Defendant was the only party to the Lease Agreements that knew the actual price shipper paid for each load.

40. Defendant violated the covenant of good faith and fair dealing by under-reporting the price of the loads that Plaintiffs hauled and then paying Plaintiffs a percentage of the lower, under-reported amount.

### Count II - Truth in Leasing Act

41. Plaintiffs incorporate all prior allegations as if fully stated herein.

42. Defendant is a motor carrier licensed with the U.S. Department of Transportation.

43. Under the TILA regulations, an authorized carrier may perform authorized transportation in leased equipment only if the written lease granting the use of the equipment meets the requirements of 49 C.F.R. § 376.12.

44. Under the regulations, the required lease provisions must be "adhered to and performed by the authorized carrier." *Id.* § 376.12 (introductory paragraph). The TILA also requires that leases disclose all "chargebacks" or deductions from an owner-operator's compensation, *id*. § 376.12(h), and that carriers provide copies of the rated freight bill to owner-operators who are paid a percentage of the price of the load at or before the time of settlement.

*Id.* § 376.12(g). Finally, the regulations require the carrier to adhere to the terms of the lease. *Id.* § 376.12 (intro paragraph).

45. Defendant entered into Lease Agreements with Plaintiffs and the Class agreeing to pay them a percentage of the gross revenue of loads they hauled under Defendant's carrier license.

46. The Lease Agreement constituted a lease under the TILA. *Id.* § 376.2(e).

47. Defendant refused to provide Plaintiffs with copies of the rated freight bill or any form of documentation actually used for a shipment containing the same information that would appear on a rated freight bill at or before the time of settlement. *Id.* § 376.12(g). The failure to disclose the rated freight bill prevented Plaintiffs from contesting the underpayment.

48. Defendant did not adhere to the terms of the Lease Agreements because it paid Plaintiffs and the Class less than the percentage of the load rate it promised in the Lease Agreement.

49. Defendant violated the TILA by not paying interest on escrow deductions and by refusing to return Plaintiff White's escrow deposit.

50. Defendant violated the TILA by deducting money from Hodari Worldwide Logistics' pay for a maintenance account that was not authorized by the applicable equipment lease.

51. Under 49 U.S.C. §14704(a)(2), Defendant is liable to Plaintiffs and the Class for the damages that they suffered on account of Defendant's regulatory violations.

### Prayer for Relief

Plaintiffs, individually and on behalf of the Class, respectfully prays for the following relief:

    a. An order certifying the Class as defined above, appointing Plaintiffs as Class representative, and appointing Plaintiffs' counsel as Class Counsel;

    b. An award of all economic, monetary, actual, consequential, and compensatory, damages available under the law;

    c. An award of restitution and disgorgement;

    d. An award of all equitable relief requested herein;

    e. An award of reasonable litigation expenses and attorneys' fees;

    f. An award of pre- and post-judgment interest, to the extent allowable; and

    g. Other further relief that the Court deems just and reasonable.

## **Jury Demand**

Plaintiffs demands trial by jury on all issues as to which a jury trial is available.

Date: November 15, 2022

Respectfully submitted,

/s/ Christopher J. Wilmes
One of the Attorneys for the Plaintiff

Christopher J. Wilmes
cwilmes@hsplegal.com
Emily R. Brown
ebrown@hsplegal.com
Hughes Socol Piers Resnick & Dym
70 W. Madison St., Ste. 4000
Chicago, IL 60602
(312) 580-0100