IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KENNY KING d/b/a PUGILIST LOGISTICS, JAMES WHITE, JOHN TINSLEY d/b/a JS TRANSPORTATION, HODARI WORLDWIDE LOGISTICS, INC., ABD'AL HAKIM ALI, DIAMOND LANE LLC, KENNETH GUNTER d/b/a VOLUNTEER TRANSPORT, and BRANDON NELSON, individually and on behalf of others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> JDM EXPEDITE INC., TEMPO FREIGHT SYSTEMS, LLC, and ALEKSANDAR KRAGOVIC, <br><br> Defendants. | Case No. 22 CV 6393 <br><br> District Judge Nancy L. Maldonado <br><br> Magistrate Judge Sheila M. Finnegan |

**SECOND AMENDED CLASS ACTION COMPLAINT**

Plaintiffs Kenny King d/b/a Pugilist Logistics ("King"), James White ("White") John Tinsley d/b/a JS Transportation ("Tinsley"), Hodari Worldwide Logistics, Inc. ("Hodari Worldwide"), Ab'dal Hakim Ali ("Ali"), , Brandon Nelson ("Nelson"), Diamond Lane, LLC ("Diamond Lane"), and Kenneth Gunter d/b/a Volunteer Transport ("Gunter") bring this case individually and on behalf of others similarly situated against Defendants JDM Expedite Inc. ("JDM"), Tempo Freight Systems, LLC ("Tempo Freight"), and Aleksandar Kragovic ("Kragovic") for breach of contract, violations of the Truth in Leasing Act ("TILA"), 49 U.S.C. § 14704(a)(2), and violations of the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/14. Plaintiffs bring their claims as a putative class action.

## NATURE OF THE CASE

1. JDM engaged in a widespread scheme to violate its lease agreements with owner-operators in order to steal part of owner-operators' promised compensation. JDM agreed to pay Plaintiffs and other owner-operators a certain percentage of the revenue for each load they hauled for JDM and then lied to Plaintiffs about the actual price of the load. Defendants then refused to provide documentation of the load price to further conceal their scheme.

2. Defendant JDM is a federally licensed motor carrier that enters into contracts with owner-operators to use their semi-trucks, with or without a driver, to transport goods under its motor carrier license. Kragovic is the owner and president of JDM. Tempo Freight is a federally licensed motor carrier and JDM's successor.

3. Plaintiffs and other drivers worked for JDM as owner-operators, leasing their trucks directly from JDM.

### Parties

4. Plaintiff Kenny King, a Florida resident, is an interstate truck driver. He has a CDL Class A license and worked for JDM as a truck driver from September to November 2022 under the corporate name "Pugilist Logistics." During all times that King worked for JDM, he was not an agent of JDM for the purposes of the TILA. King had exclusive possession and use of his truck when he worked for JDM.

5. Plaintiff James White, a Mississippi resident, is an interstate truck driver. He has a CDL Class A license and worked for JDM as a truck driver from September 2020 to August 2022. During all times that White worked for JDM, he was not an agent of JDM for the purposes of the TILA. White had exclusive possession and use of his truck when he worked for JDM.

6. Plaintiff Abdal Hakim Ali, an Illinois resident, is an interstate truck driver. He has a CDL Class A license and worked for JDM as a truck driver from October 2021 to July 2022.

7. Plaintiff Hodari Worldwide Logistics, Inc. is an Illinois corporation owned by Abdal Hakim Ali. It contracted with JDM to operate a semitruck in interstate commerce from October 2021 to July 2022. During all times that Hodari Worldwide Logistics worked for Defendant, it was not an agent of Defendant for purposes of the TILA. Hodari Worldwide Logistics had exclusive possession and use of his truck when he worked for JDM.

8. Plaintiff John Tinsley, a Kansas resident, drove for JDM from October 2022 to November 2022 under the corporate name "JS Transportation." Tinsley contracted with JDM to operate a semitruck in interstate commerce for JDM from October 2022 to November 2022. During all times that Tinsley worked for JDM, he was not an agent of JDM for purposes of the TILA. Tinsley had exclusive possession and use of his truck when he worked for JDM.

9. Plaintiff Kenneth Gunter, a Tennessee resident, is an interstate truck driver. He has a CDL Class A license and worked for JDM as a truck driver from November 2017 to April 2018 under the business name "Volunteer Transport." During all times that Gunter worked for JDM, he was not an agent of JDM for the purposes of the TILA. Gunter had exclusive possession and use of his truck when he worked for JDM.

10. Plaintiff Diamond Lane LLC is a Tennessee corporation owned by Brandon Nelson. It contracted with JDM to operate a semitruck in interstate commerce from October 2017 to May 2018. During all times that Diamond Lane worked for JDM, it was not an agent of JDM for the purposes of the TILA. Diamond Lane had exclusive possession and use of his truck when he worked for JDM.

11. Plaintiff Brandon Nelson, a Tennessee resident, is an interstate truck driver and the owner of Diamond Lane LLC. He has a CDL Class A license and worked as a truck driver for JDM from October 2017 to May 2018.

12. Defendant JDM is an Illinois business corporation with principal place of business in Lyons, Illinois. JDM is a federally regulated motor carrier providing transportation services to the shipping public and is an "authorized carrier" within the meaning of 49 C.F.R. § 376.2(a).

13. JDM employs or contracts with drivers to transport its customers' freight in interstate commerce. As part of its business, JDM leases equipment from other related entities or owner-operators.

14. JDM is registered under MC-811043, US DOT # 2365543. According to the SAFER – FMCSA management information systems, as of November 2022, JDM reported that it operates 209 power units (semi-trucks) and has 264 drivers. Further, JDM reported that it ran approximately 23.8 million miles in 2021.

15. Defendant Tempo Freight Systems, LLC is an Illinois corporation with its principal place of business in Schaumburg, Illinois. Tempo Freight is a federally regulated motor carrier providing transportation services to the shipping public and is an "authorized carrier" within the meaning of 49 C.F.R. § 376.2(a).

16. Tempo Freight employs or contracts with drivers to transport its customers' freight in interstate commerce. As part of its business, Tempo Freight leases equipment from other related entities or owner-operators.

17. Defendant Aleksandar Kragovic is an Illinois resident and president of JDM and Tempo Freight Systems, LLC.

**Jurisdiction and Venue**

18. The Court has subject matter jurisdiction over this action pursuant to the TILA, 49 U.S.C. § 14704 and 28 U.S.C. § 1331.

19. Venue is proper in this jurisdiction under 18 U.S.C. § 1965(a) and 28 U.S.C. § 1391(a), (b), and (c) because a substantial part of the events and omissions giving rise to this action occurred in the Northern District of Illinois.

**Legal Standards**

20. The TILA and its implementing regulations govern the terms and conditions under which owner-operator truckers lease equipment to federally authorized motor carriers that transport freight in interstate commerce. *See* 49 U.S.C. § 14102(a); 49 C.F.R. § 376.12. TILA regulations require the motor carrier's equipment leases to disclose, in writing, the amount that the motor carrier will pay the owner-operator as compensation. 49 C.F.R. § 376.12(d). The regulations also require that those leases disclose the details of any escrow withholdings and charge back items. *Id*. at § 376.12 (h), (k). When the lessor's revenue is based on a percentage of the gross revenue for a shipment, the lease must specify that the carrier will provide the lessor a copy of the rated freight bill, or any other documentation actually used for a shipment containing the same information, before or at the time of settlement. *Id*. at 376.12(g).

21. The regulations require the motor carrier to adhere to the terms of the lease. *Id.* § 376.12 (introductory paragraph).

22. Finally, the TILA provides that "no person shall aid, abet, encourage, or require a motor carrier or its employees to violate the rules of [the TILA]." 49 C.F.R. 390.13. Individuals who aid, abet, and encourage the violations can be held liable in their individual capacities. *See*

*Porter v. T&T Farms, Inc.*, No. 21 C 529-JD-MGG, 2022 WL 1746927, at *4 (N.D. Ind. May 27, 2022).

23. The federal doctrine of successor liability is available to Plaintiffs claiming violations of federal labor and employment laws. To determine whether to apply the doctrine, courts consider (1) whether the successor had notice of the pending lawsuit; (2) whether the predecessor could have provided the relief sought before the sale or dissolution; (3) whether the predecessor could have provided relief after the sale or dissolution; (4) whether the successor can provide the relief sought; and (5) whether there is continuity between the operations and work force of the predecessor and successor. *See Teed v. Thomas & Betts Power Solutions, L.L.C.*, 711 F.3d 763, 765–66 (7th Cir. 2013).

24. The IWPCA and its implementing regulations prohibit employers from making deductions from their employees' wages without the employees' express written authorization, given freely at the time of the deduction. 820 ILCS § 115/9.

25. The IWPCA provides that "any officers of a corporation or agents of an employer who knowingly permit such employer to violate the provisions of [the IWPCA] shall be deemed to be the employers of the employees of the corporation." *Id*. § 115/13.

**Common Facts**

26. Plaintiffs entered into an equipment lease (hereinafter "Lease Agreement") with JDM to transport goods in interstate commerce under JDM's carrier license. The Lease was substantively identical to the one attached hereto as Exhibit A, though JDM offered Plaintiffs varying percentages of the revenue rate as compensation. *See* Ex. A -Lease Agreement.

27. The Lease Agreement constituted a "lease" under the TILA. 49 C.F.R. §376.2(e).

6

28. Under the Lease Agreement, JDM agreed to pay Plaintiffs a percentage of the gross revenue payable for each load that Plaintiffs hauled with their equipment under JDM's carrier license. Ex. A, Lease Agreement, Amendment A. The Lease Agreement superseded and replaced any agreement that previously existed between the parties.

29. TILA regulations required JDM to make certain disclosures to Plaintiffs regarding their compensation and deductions from their pay. 49 C.F.R. § 376.12. Specifically, the regulations required JDM to provide Plaintiffs with the rated freight bill for each load they hauled at or before the time of settlement (pay). *Id.* at § 376.12(g).

30. JDM and Kragovic refused to provide Plaintiffs with rate confirmation sheets or rated freight bills at or before the time of settlement. Instead, JDM (falsely) communicated the price of the load directly to Plaintiffs by phone, text, or e-mail.

31. JDM provided Plaintiff Hodari Worldwide Logistics a document in October 2021, which stated that the company's policy was to not provide rate confirmation sheets to any of its drivers. That so-called agreement, which plainly violated the TILA, was superseded by the parties' December 15, 2021 Lease Agreement. *See* Exhibit A.

32. On August 31, 2022, Plaintiff Hodari Worldwide Logistics, through counsel, requested JDM to send him all of his rate confirmation sheets, as contemplated by 49 C.F.R. §376.12(g). JDM refused to produce them before Plaintiffs filed this lawsuit.

33. JDM lied and under-reported the actual load rates (or prices) in its communications with Plaintiffs and in Plaintiffs' settlement (pay) statements.

34. For example, on January 26, 2022, JDM informed White that a load from Wisconsin to Oklahoma paid $3,300. However, a freight broker informed White that the load

7

actually paid $3,800. JDM then paid White 85% of the lower amount rather than paying him 85% of the actual load price.

35. As another example, on March 18, 2022, JDM informed White that a load from Missouri to Alabama paid $2,000. However, a freight broker informed White that the load actually paid $2,700. Defendant then paid White 85% of the lower amount rather than paying him 85% of the actual load price.

36. During the first two months of working for JDM, Hodari Worldwide Logistics – through its owner Abd'al Hakim Ali – spoke with a freight broker and asked about the price of a load that Ali was hauling. The freight broker quoted a price that was $200-$300 more than the price that Defendant quoted Hodari Worldwide Logistics. JDM then paid Hodari Worldwide Logistics 85% of the lower amount rather than paying it 85% of the actual load price.

37. On numerous occasions, third party brokers informed Nelson that the price JDM quoted for a certain load was lower than the price the broker paid to JDM.

38. On one occasion in 2018, Gunter and Nelson confronted Kragovic about the fact that JDM was under-reporting the price of the load and paying them only 80% of the lower, under-reported price. Kragovic told Gunter and Nelson that they should leave the company if they did not like how he ran his business.

39. JDM violated the TILA rules by not adhering to the terms of its lease agreements with Plaintiffs. 49 C.F.R. § 376.12 (intro paragraph).

40. Specifically, Plaintiffs entered lease agreements with JDM in which Defendant promised to pay them a fixed percentage of the gross revenue that Defendant received for each load. JDM repeatedly lied to Plaintiffs about the gross revenue that it received for Plaintiffs' load and paid Plaintiffs less than their lease agreement required.

8

41. During the past five years alone, JDM has contracted with at least one-hundred lessor/owner-operators to provide transportation service for its clients.

42. On information and belief, JDM entered substantively identical lease agreements with at least one-hundred drivers promising to pay them a fixed percentage of the load price.

43. On information and belief, JDM had a company policy of under-reporting the price of the load to all owner-operators with whom it contracted and paying them a fixed percentage of the lower, under-reported rate.

44. JDM deducted money from Plaintiffs' pay for an escrow account. JDM took $2,000 from White's pay for an escrow account but never repaid it to him after he stopped working for JDM in August 2022.

45. JDM deducted hundreds of dollars from King's, Gunter's, Diamond Lane's, and Tinsley's pay for an escrow account but never repaid it to them after they stopped working for JDM.

46. JDM deducted money from Hodari Worldwide Logistics, Diamond Lane, and Tinsley's pay for a maintenance account, even though the equipment lease did not permit this deduction.

47. JDM never applied Hodari Worldwide or Tinsley's maintenance account to any repairs or maintenance on their leased truck, and then JDM retained the maintenance accounts when Hodari Worldwide and Tinsley terminated their contracts with JDM.

48. On information and belief, JDM had a company policy of deducting an escrow deposit from all putative class members' pay.

49. JDM never paid interest on any of the escrow deductions that it took from Plaintiffs' or the other putative class members' pay.

9

50. JDM retained Diamond Lane's and Gunter's last settlement payment without justification.

51. JDM exercised direction and control over the work Ali, White, Tinsley, King, Nelson, and Gunter ("IWPCA Plaintiffs") performed for JDM. JDM directed the Plaintiffs on all aspects of their routes, including the times and locations to pick up trailers and loads, the specific routes they took to drive to delivery locations, and the times they were required to arrive at delivery locations. Plaintiffs did not have the opportunity to choose their own loads or routes.

52. JDM also provided Plaintiffs a handbook full of rules that drivers were required to follow. Ex. B (Company Rules).

53. JDM required Plaintiffs to contract under a corporate name.

54. During their time as drivers for JDM, the IWPCA Plaintiffs picked up and delivered loads for JDM in Illinois. Plaintiffs were not in an independently established trade, occupation, profession, or business.

55. JDM made deductions from IWPCA Plaintiffs' settlement statements (paychecks) for, among other things, escrow, mattress, ELD, drug test, repairs, travel expenses, E-Log, registrations, occupational accident insurance, and violations, without obtaining their express written authorization at the time of the deductions.

56. The deductions were not required by law, to the benefit of the Plaintiffs, or made in response to a valid wage assignment or wage deduction order.

57. Defendant Aleksandar Kragovic had authority over JDM's policies and practices with regard to paying IWPCA Plaintiffs.

58. Defendant Kragovic was aware of and permitted the unauthorized deductions from IWPCA Plaintiffs' paychecks. He had the authority to stop the deductions but did not do so.

59. In December 2022, less than one month after this lawsuit was filed, JDM reduced its number of power units (or trucks) from 215 to five. The next month, it reduced its number of power units from five to one.[1]

60. From December 2022 to April 2023, Tempo Freight Systems increased the number of its power units from 20 to 200.

61. In early 2023, JDM transferred most of its assets to Tempo Freight Systems, retaining the same equipment and the same workforce.

62. JDM disclosed in discovery that AK Solutions, LLC, a Delaware corporation, contracts with to help manage its business."

63. AK Solutions, LLC is listed as a member on Tempo Freight Systems, Inc.'s corporate filings. AK Solutions shares the same address as JDM.

64. On information and belief, Kragovic is president of AK Systems, LLC.

65. Before transferring its assets to Tempo Freight Systems, JDM could have provided the relief Plaintiffs are seeking on behalf of the class.

66. On information and belief, at least some drivers who signed contracts with Tempo Freight mistakenly believed that they were driving for JDM because the company held itself out as JDM and branded its equipment with JDM's logo.

67. In or about the first half of 2023, during a driver orientation for Tempo Freight Systems, one of the staff members stated that the company was JDM Expedite "but renamed."

68. Tempo Freight had notice of the pending lawsuit against JDM when JDM transferred its assets to Tempo Freight.

---

[1] https://ai.fmcsa.dot.gov/SMS/Carrier/2365543/History.aspx.

69. JDM now cannot provide all of the relief that Plaintiffs are seeking on behalf of the Class.

70. On information and belief, Tempo Freight can now provide the relief Plaintiffs are seeking on behalf of the Class.

71. Mr. Kragovic was aware of and aided, abetted, and encouraged JDM's violations of the TILA. When Nelson and Gunter confronted Kragovic about JDM's illegal practices, Kragovic did not deny the allegations and instead told Nelson and Gunter to go drive for another carrier if they did not like the way he ran his business.

72. Mr. Kragovic knew about and encouraged JDM's illegal practice of underreporting the price of the load to drivers, failing to provide copies of the brokers' rate confirmations, and retaining owner-operators' maintenance accounts without applying the funds to maintenance of the drivers' trucks. He could have stopped the illegal practices but chose to continue them.

**Class Allegations**

73. Plaintiffs brings this action on behalf of themselves and a class of similarly situated individuals or entities, defined as:

> Breach of Contract Class: All individuals or entities that contracted with JDM Expedite, Inc. as lessors/owner operators from November 15, 2012 to the present and that were paid based on a percentage of the load rate.
>
> TILA Class: All individuals or entities that contracted with JDM Expedite, Inc. as lessors/owner operators from November 15, 2018 to the present and that were paid based on a percentage of the load rate.
>
> IWPCA Class: All individuals that contracted with JDM Expedite, Inc. and picked up or delivered loads for JDM in Illinois.

74. The Classes defined above satisfy the requirements of Rules 23(a) and 23(g).

12

a. **Numerosity.** The Classes are so numerous that joinder of all members is impracticable, and the disposition of their claims in a class action will provide substantial benefits to both the parties and the Court. Since 2012, Defendant has contracted with over 100 owner-operator drivers and paid them based on a percentage of the load rate.

b. **Commonality.** Common questions of law and fact predominate over individual issues affecting only individual class members. Questions of law and fact common to the Classes include, among others, the following:

   i. Whether JDM violated the TILA by refusing to provide owner-operators with the rated freight bill at or before the time of settlement;

   ii. Whether JDM breached the terms of their agreements with owner-operator drivers by paying them less than the promised percentage of gross receipts on each load;

   iii. Whether JDM refused to repay escrow deposits in violation of the TILA;

   iv. Whether JDM failed to pay interest on escrow deposits.

   v. Whether Kragovic aided, abetted, and encouraged JDM to commit violations of the TILA;

   vi. Whether Tempo Freight Systems is liable as successor in interest to JDM;

   vii. Whether individual Plaintiffs were employees of JDM for the purposes of the IWPCA;

   viii. Whether JDM took deductions from Plaintiffs' pay without their written authorization at the time of the deduction.

c. **Typicality**. Plaintiffs' claims are typical of the Classes' claims because Plaintiffs and all Class members were injured through Defendant's uniform misconduct. The claims of Plaintiffs and the Classes arise from the same

13

      operative facts and are based upon the same legal theories. There are no defenses unique to Plaintiffs.

    d. **Adequacy.** Plaintiffs will fairly and adequately protect and represent the interests the Classes because (i) Plaintiffs have retained competent and experienced counsel that have the time, experience, and resources to litigate this case; (ii) Plaintiffs are members of the Classes, their claims are typical of the Classes, and they have suffered substantially similar injuries to those suffered by the rest of the Classes; (iii) Plaintiffs' interest in obtaining monetary relief for the Classes are consistent with and not antagonistic to the interests of the Classes.

75. The proposed Class satisfies the requirements of Fed. R. Civ. P. 23(b)(3).

    a. **Predominance**. Common questions predominate over any individual questions because the important and prevalent issues in this case concern Defendants' conduct and its effects, which are common to the Classes. Individual issues are minor and may be nothing more than damages calculations pursuant to a formula.

    b. **Superiority**. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages suffered by Plaintiffs and the Classes, while collectively substantial, are relatively small per Class member compared to the burden and expense required to individually litigate their claims. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay

and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Both liability and damages can be determined in one class-wide proceeding.

**Count I - Breach of Contract Against JDM and Tempo Freight (By Hodari Worldwide, Kenny King, John Tinsley, James White, Diamond Lane, and Kenneth Gunter)**

76. Plaintiffs incorporate all prior allegations as if fully stated herein.

77. Defendant JDM entered into Lease Agreements with Plaintiffs and the Class agreeing to pay them a fixed percentage of the gross revenue of the loads they hauled for JDM.

78. On information and belief, JDM entered into a substantially similar Lease Agreement with all the Class members.

79. Plaintiffs and the Class members substantially performed all their obligations under their contracts with JDM.

80. JDM breached its contracts with Plaintiffs and the Class members by not paying them the correct percentage of the real rate that brokers or shippers paid to JDM.

81. JDM also breached its contracts with Plaintiffs by deducting numerous other charges from Plaintiffs' pay for items not authorized by their equipment lease and by not returning their escrow deposits.

82. JDM was the only party to the Lease Agreements that knew the actual price shipper paid for each load.

83. Tempo Freight is liable for JDM's breaches of Plaintiffs' contracts as successor in interest.

**Count II - Truth in Leasing Act Against All Defendants (By Hodari Worldwide, Kenny King, John Tinsley, and James White)**

84. Plaintiffs incorporate all prior allegations as if fully stated herein.

85. JDM is a motor carrier licensed with the U.S. Department of Transportation.

86. Under the TILA regulations, an authorized carrier may perform authorized transportation in leased equipment only if the written lease granting the use of the equipment meets the requirements of 49 C.F.R. § 376.12.

87. Under the regulations, the required lease provisions must be "adhered to and performed by the authorized carrier." *Id.* § 376.12 (introductory paragraph). The TILA also requires that leases disclose all "chargebacks" or deductions from an owner-operator's compensation, *id*. § 376.12(h), and that carriers provide copies of the rated freight bill to owner-operators who are paid a percentage of the price of the load at or before the time of settlement. *Id.* § 376.12(g).

88. JDM entered into Lease Agreements with Plaintiffs and the Class agreeing to pay them a percentage of the gross revenue of loads they hauled under Defendant's carrier license.

89. The Lease Agreement constituted a lease under the TILA. *Id*. § 376.2(e).

90. JDM refused to provide Plaintiffs with copies of the rated freight bill or any form of documentation actually used for a shipment containing the same information that would appear on a rated freight bill at or before the time of settlement. *Id*. § 376.12(g). The failure to disclose the rated freight bill prevented Plaintiffs from contesting the underpayment.

91. JDM did not adhere to the terms of the Lease Agreements because it paid Plaintiffs and the Class less than the percentage of the load rate it promised in the Lease Agreement.

92. JDM violated the TILA by not paying interest on escrow deductions and by refusing to return King's, White's, and Tinsley's escrow deposits.

93. JDM violated the TILA by deducting money from Hodari Worldwide Logistics' and other drivers' pay for a maintenance account that was not authorized by the applicable equipment lease.

94. JDM never applied Hodari Worldwide's maintenance account to any repairs or maintenance on Hodari Worldwide's leased truck. JDM then retained Hodari Worldwide's maintenance account when Hodari terminated its contract.

95. JDM made numerous other charges from Plaintiffs' pay for items not authorized by their equipment lease.

96. Kragovic aided, abetted, and encouraged JDM's violations of the TILA.

97. Tempo Freight is liable for JDM and Kragovic's violations as successor in interest.

98. Under 49 U.S.C. §14704(a)(2), Defendant is liable to Plaintiffs and the Class for the damages that they suffered on account of Defendant's regulatory violations.

**COUNT III – Illinois Wage Payment & Collection Act Against All Defendants (by King, White, Tinsley, Ali, Nelson, and Gunter)**

99. Plaintiffs incorporate all previous allegations as though fully set forth herein.

100. JDM employed IWPCA Plaintiffs for purposes of the IWPCA.

101. JDM agreed to pay Plaintiffs a percentage of the load of each delivery they hauled for JDM. In some cases, JDM agreed to pay Plaintiffs through a corporate form that Plaintiffs only used to receive pay from JDM.

102. The IWPCA prohibits employers from making deductions from wages without the employee's express written authorization at the time of the deduction. 820 ILCS 115/9.

103. JDM made numerous deductions from IWPCA Plaintiffs' paychecks without their express written authorization at the time of the deductions. Many of the deductions also were not even contemplated by the parties' written contract.

17

104. The IWPCA provides that individual officers of a corporation can be liable under the act if they "knowingly permit" the violations to occur. 820 ILCS 115/13.

105. Kragovic was aware of and approved the unauthorized deductions from Plaintiffs' pay.

106. Tempo Freight is liable for JDM's IWPCA violations as successor in interest to JDM.

**Prayer for Relief**

Plaintiffs, individually and on behalf of the Class, respectfully prays for the following relief:

    a. An order certifying the Classes as defined above, appointing Plaintiffs' counsel as Class Counsel, and appointing the following Plaintiffs as class representatives:

        1. Breach of Contract Class: Hodari Worldwide, King, Tinsley, White, Diamond Lane, and Gunter;

        2. TILA Class: Hodari Worldwide, King, Tinsley, and White;

        3. IWPCA Class: King, White, Tinsley, Ali, Gunter, and Nelson;

    b. An award of all economic, monetary, actual, consequential, and compensatory, damages available under the law;

    c. An award of all available equitable relief;

    d. An award of reasonable litigation expenses and attorneys' fees;

    e. An award of pre- and post-judgment interest, to the extent allowable; and

    f. Other further relief that the Court deems just and reasonable.

**Jury Demand**

Plaintiffs demand trial by jury on all issues as to which a jury trial is available.

Date: December 11, 2023                    Respectfully submitted,

                                                                                     /s/ Christopher J. Wilmes
                                                                                      One of the Attorneys for the Plaintiff

Christopher J. Wilmes
cwilmes@hsplegal.com
Emily R. Brown
ebrown@hsplegal.com
Hughes Socol Piers Resnick & Dym
70 W. Madison St., Ste. 4000
Chicago, IL 60602
(312) 580-0100

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing Second Amended Class Action Complaint will be served through the CM/ECF system to counsel of record on December 11, 2023.

    Katheleen Ehrhart
    Martin Syvertsen
    Smith Gambrell & Russell LLP
    311 S. Wacker Dr., Suite 3000
    Chicago, IL 60606
    312.360.6000
    kehrhart@sgrlaw.com
    mysvertsen@sgrlaw.com

    /s/ Christopher J. Wilmes