IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Kenny King, et al., | ) |
|         Plaintiffs, | ) |
| | ) Case No. 22-cv-6393 |
| v. | ) |
| | ) Judge Joan B. Gottschall |
| JDM Expedite Inc., et al., | ) |
|         Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

This commercial trucking dispute comes before the court on two Federal Rule of Civil Procedure 12(b)(6) motions to dismiss plaintiffs' second amended complaint (cited as "SAC," ECF No. 39) for failure to state a claim. Plaintiffs, a group of commercial truck drivers, allege that defendant JDM Expedite, Inc. ("JDM"), breached their lease agreements by underreporting the amount JDM's customers paid for loads plaintiffs hauled and paying plaintiffs a percentage of the underreported gross revenue. *See* SAC ¶¶ 1–3, 26–35. They bring claims for breach of contract, under the federal Truth in Leasing Act ("TILA"), 49 U.S.C. § 14704(a)(2); and under the Illinois Wage Payment and Collection Act ("IWPCA"), 820 Ill. Comp. Stat. § 115/14. For the following reasons, the court dismisses the second amended complaint in part.

**I. Summary of the Second Amended Complaint[1]**

Plaintiffs are eight individuals and corporations who worked as commercial truck drivers for defendant JDM. *See* SAC ¶¶ 4–11. Each plaintiff worked as an owner operator, meaning that each leased a truck from JDM. SAC ¶¶ 3, 26. Plaintiff James White sues in his own name. SAC ¶ 5. Three individual plaintiffs allege that they drove under the following "corporate name[s]": Kenny King under the name Pugilist Logistics; John Tinsley under the name

---

[1] As discussed in the text, *infra*, when deciding a Federal Rule 12(b)(6) motion to dismiss a complaint for failure to state a claim, the court "must construe the complaint in the light most favorable to plaintiff, accept all well-pleaded facts as true, and draw reasonable inferences in plaintiff's favor." *Taha v. Int'l Brd. of Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020) (citing *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013)). The court recites the alleged facts in the SAC through this procedural lens.

JS Transportation; and Kenneth Gunter under the name Volunteer Transport. SAC ¶¶ 4, 8, 9. Two plaintiffs are corporations, Hodari Worldwide Logistics, Inc. ("Hodari Worldwide"), and Diamond Lane, LLC ("Diamond Lane"). SAC ¶¶ 7, 10. Plaintiffs Abdal Hakim Ali and Brandon Nelson, respectively, owned and drove for Hodari Worldwide and Diamond Lane. SAC ¶¶ 6, 7, 10, 11.

In addition to JDM, plaintiffs name as defendants Aleksandar Kragovic ("Kragovic") and Tempo Freight Systems, LLC. ("Tempo Freight"). SAC ¶¶ 16, 27. Kragovic serves as president of JDM and Tempo Freight. SAC ¶ 17.

The parties agree that the TILA and its implementing regulations generally govern the leasing relationship between JDM and plaintiffs. *See* 49 U.S.C. § 14102(a). The TILA and its regulations require a lease (referred to as an "arrangement" in the statute) to specify "its duration and the compensation to be paid by the motor carrier," here JDM. 49 U.S.C. § 14102(a)(1); *see* 49 C.F.R. § 376.12. The implementing regulations contain the following pertinent provisions:

> (d) Compensation to be specified. The amount to be paid by the authorized carrier for equipment and driver's services shall be clearly stated on the face of the lease or in an addendum which is attached to the lease. . . . An authorized representative of the lessor may accept these documents. The amount to be paid may be expressed as a percentage of gross revenue, a flat rate per mile, a variable rate depending on the direction traveled or the type of commodity transported, or by any other method of compensation mutually agreed upon by the parties to the lease. . . .
>
> * * *
>
> (g) Copies of freight bill or other form of freight documentation. When a lessor's revenue is based on a percentage of the gross revenue for a shipment, the lease must specify that the authorized carrier will give the lessor, before or at the time of settlement, a copy of the rated freight bill, or, in the case of contract carriers, any other form of documentation actually used for a shipment containing the same information that would appear on a rated freight bill. Regardless of the method of compensation, the lease must permit lessor to examine copies of the carrier's tariff or, in the case of contract carriers, other documents from which rates and charges are computed, provided that where rates and charges are computed from a contract of a contract carrier, only those portions of the contract containing the same information that would appear on a rated freight bill need be disclosed. The authorized carrier may delete the names of shippers and consignees shown on the freight bill or other form of documentation.

49 C.F.R. § 376.12(d)(g).

The regulation's "disclosure requirement protects owner-operators from unscrupulous carriers who might be tempted to hide such information, to underpay for the shipment, and to pocket the difference." *Brant v. Schneider Nat'l, Inc.*, 43 F.4th 656, 679 (7th Cir. 2022). Here, the leases between JDM and plaintiffs provided that each plaintiff would be paid a percentage of the gross revenue for each shipment; the exact percentage varied from plaintiff to plaintiff. *See* SAC ¶¶ 26–28.

"JDM and Kragovic refused to provide Plaintiffs with rate confirmation sheets or rated freight bills at or before the time of settlement. Instead, JDM (falsely) communicated the price of the load directly to Plaintiffs by phone, text, or e-mail." SAC ¶ 30. JDM advised one of the plaintiffs in October 2021 that its policy "was to not provide rate confirmation sheets to any of its drivers." SAC ¶ 31.

By way of an example, JDM told plaintiff White on January 26, 2022, that the gross revenue for a load from Wisconsin to Oklahoma was $3,330. SAC ¶ 34. A freight broker informed White that the customer paid JDM $3,800 for the load. *id.* Plaintiffs plead that JDM routinely underreported the gross revenue for loads they hauled. *See* SAC ¶¶ 31–38.

In Count I of the SAC, plaintiffs allege that JDM breached its lease agreements with them. Count II charges that JDM, Tempo Freight, and Kragovic violated the truth in leasing regulations quoted above. And Count III arises under the IWPCA against all defendants. Plaintiffs propose to represent classes of all drivers who contracted with JDM as owner-operators on various dates, which appear to vary with the applicable limitations period. *See* SAC ¶¶ 73–74.

Plaintiffs allege that Tempo Freight is liable as a corporate successor to JDM because JDM transferred most of its assets to Tempo Freight in early 2023, after this case was filed, in an

3

effort to avoid paying a judgment. *See* SAC ¶¶ 61–65, 83, 97, 106. As for Kragovic, plaintiffs plead that he is liable under TILA as an aider and abettor of JDM and under the IWPCA because he was allegedly aware of, and approved, JDM's IWPCA violations. *See* SAC ¶¶ 96, 105.

Plaintiffs attached two exhibits to the SAC. These exhibits may be considered at this stage because they are attached to and incorporated into the SAC. *See* SAC ¶¶ 27, 31; Fed. R. Civ. P. 10(c). Exhibit A is a sample lease agreement, entitled "Rent to Run Agreement," between JDM and plaintiff Hodari Worldwide. ECF 39 Ex. A.

A document entitled "Company Policy" comprises Exhibit B to the SAC. ECF 39 Ex. B. Internally, the document refers to itself as a "manual." *e.g., id.* at 1 (introduction).

## II. Rule 12(b)(6) Standard

A Rule 12(b)(6) motion tests the complaint's sufficiency, not the merits of the case. *See Skinner v. Switzer*, 562 U.S. 521, 529–30 (2011) (citations omitted); *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). Federal Rule of Civil Procedure 8(a)(2) requires a complaint to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion, a pleading must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint satisfies this standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 545 (citations omitted).

On a Rule 12(b)(6) motion, the court must "accept all well-pleaded facts from the [complaint] as true and view them in the light most favorable to the plaintiff." *Demkovich v. St. Andrew the Apostle Parish, Calumet City*, 3 F.4th 968, 973 n.2 (7th Cir. 2021) (en banc) (citing *White v. United Airlines, Inc.*, 987 F.3d 616, 620 (7th Cir. 2021)). This principle "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action,

4

supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

### III. Analysis

For the most part, the two motions before the court raise overlapping issues. JDM moves to dismiss the second amended complaint in its entirety. Kragovic and Tempo Freight join JDM's motion, ECF No. 47 at 2, and move to dismiss on additional grounds, specifically, that the SAC fails to state a claim for imposing successor liability upon Tempo Freight and that Kragovic cannot be held individually liable under the TILA and the IWPCA.

#### A. Proper Party Plaintiffs

Defendants argue that the individual plaintiffs are not the proper parties to sue for breach of contract and under the TILA (Counts I and II). For support, they point to ¶ 53 of the SAC: "JDM required Plaintiffs to contract under a corporate name." Based on this allegation, defendants ask the court to infer that the individual plaintiffs signed their respective lease agreements in a corporate capacity, making non-party corporations the proper plaintiffs. *See* JDM Mot. to Dismiss 5–6, ECF No. 43.

Defendants rely on *Hill v. Cargo Runner Co.*, 2023 WL 6213674, at *3 (N.D. Ill. Sept. 25, 2023), in which the court had a copy of all of the plaintiffs' lease agreements in the record as an appendix to the complaint. *See id.* at *2. After reviewing the agreements, the court dismissed the individual plaintiffs' TILA claims because "only the Entity Plaintiffs signed the Lease Agreements at issue and [they] constitute[d] the defined owner-operators." *id.* at *3.

By contrast, plaintiffs in the case at bar attached only one lease agreement to the SAC. *See* SAC Ex. A. The record therefore does not afford the court an opportunity to compare the leases with the named plaintiffs.

With reasonable inferences in the individual plaintiffs' favor, the SAC plausibly pleads that the individual plaintiffs signed their respective lease agreements under assumed business names of sole proprietorships. *See* SAC ¶¶ 4–11. This inference is plausible because each "corporate name" in the complaint lacks one of the terms required to be included in a corporate

name, such as "Inc." or "Corp." *See id.* A sole proprietorship does not have a separate legal existence, so the owner can bring suit for harms to the business. *See, e.g., Moriarty v. Svec*, 164 F.3d 323, 336 (7th Cir. 1998); *Tinley Sparks, Inc. v. Vill. of Tinley Park*, 181 F.Supp.3d 548, 558 (N.D. Ill. 2015). Accordingly, defendants' motion to dismiss Counts I and II on the ground that the individual plaintiffs are not proper parties is denied.

### B. Contractual Waiver of Right to Have Expenses Identified

Defendants contend that plaintiffs' TILA claims should be dismissed to the extent they are premised upon failure to provide freighted rate bills or their equivalent. To support this argument, defendants attach to their motion to dismiss a rate confirmation policy which they represent each plaintiff "individually signed." JDM Mot. to Dismiss 6, ECF No. 43; Rate Confirmation Policy, ECF No. 43-1. The rate confirmation policy states that JDM "has a non-disclosure agreement regarding the Rate confirmations that prohibit us from sharing information with the Independent contractors, due to it [sic] being confidential between the customer, carrier and the broker. Contractor agrees on the price presented at the time when the load was booked. Not to interfere with our clients (brokers and or customers) we are asking all independent customers to understand that JDM expedite [sic] will not be providing any rate confirmations to any Independent contractor or anyone asking for it on their behalf." ECF No. 43-1 at 1.

A Rule 12(b)(6) motion tests only the complaint's sufficiency, so the court's resolution "can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago*, 675 F.3d 743, 751 (7th Cir. 2012) (citing Fed. R. Civ. P. 10(c) and *Papasan v. Allain*, 478 U.S. 265, 268 n.1 (1986)). Plaintiffs did not attach the rate confirmation policy to the SAC. Defendants argue that ¶ 31 of the SAC references the rate confirmation policy. That paragraph begins, "JDM provided Plaintiff Hodari Worldwide Logistics a document in October 2021, which stated that the company's policy was to not provide rate confirmation sheets to any of its drivers . . . ." SAC ¶ 31.

6

Assuming without deciding that paragraph 31 makes the rate confirmation sheet central to plaintiff's claims, paragraph 31 does not refer to any plaintiff other than Hodari Worldwide. And nothing in the SAC supports the plausible inference that Hodari Worldwide or any other plaintiff signed or saw the rate confirmation policy.

Generally speaking, "a motion under Rule 12(b)(6) stands or falls based on the allegations in the complaint." *Facebook, Inc. v. Teachbook.com LLC*, 819 F.Supp.2d 764, 773 (N.D. Ill. 2011). The allegation that plaintiffs signed the rate confirmation policy appears only in JDM's motion to dismiss. ECF No. 43 at 8. Because defendants' waiver arguments hinge on a fact alleged only in their motion to dismiss, the court cannot reach those arguments at the rule 12(b)(6) stage. *See Facebook*, 819 F. Supp. 2d at 773; *Kinney v. Dominick's Finer Foods, Inc.*, 780 F.Supp. 1178 (N.D. Ill. 1991) (citing *Yeksigian v. Nappi*, 900 F.2d 101 (7th Cir. 1990)).

### C. Employee Status Under the Illinois Wage Payment and Collection Act

"The IWPCA provides employees with a cause of action against employers for the timely and complete payment of earned wages." *Enger v. Chi. Carriage Cab Corp.*, 812 F.3d 565, 568 (7th Cir. 2016) (citing 820 Ill. Comp. Stat. § 115/2). Defendants maintain that the SAC fails to raise a plausible claim that plaintiffs are employees covered by the IWPCA. JDM Mot. to Dismiss 8–10, ECF No. 43. Illinois courts interpreting the IWPCA apply a "broad employment relationship test." *Enger*, 812 F.3d at 568. Commonly called an "ABC test," the test has three prongs, and "if an employer cannot satisfy each of the prongs, then the individual must be classified as an employee for purposes of the IWPCA." *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1050 (7th Cir. 2016) (citing *Novakovic v. Samutin*, 820 N.E.2d 967, 973 (Ill. App. Ct. 1st Dist. 2004)). Under the IWPCA ABC test the term "employee" does not include an individual:

> (1) who has been and will continue to be free from control and direction over the performance of his work, both under his contract of service with his employer and in fact; and

>(2) who performs work which is either outside the usual course of business or is performed outside all of the places of business of the employer unless the employer is in the business of contracting with third parties for the placement of employees; and
>
>(3) who is in an independently established trade, occupation, profession or business.

820 Ill. Comp. Stat. § 115/2.

Defendants do not discuss the ABC test or attempt to apply it in their motion to dismiss or in their reply brief. *See* ECF No. 43 at 8–10; ECF No. 61 at 5. They rely on a single case in their motion, but it was decided at summary judgment with the benefit of a complete factual record on which to apply the IWPCA's employment test. *See Bruger v. Olero, Inc.*, 2023 WL 6290090, at *8–9 (N.D. Ill. Sept. 27, 2023).

Defendants emphasize language in the sample lease agreement stating, "The Contractor, and any driver provided by the Contractor (Amendment C), is an Independent Contractor, and not an employee as defined in the Internal Revenue Code." SAC Ex. A at 1. This language does not control the IWPCA analysis. "Courts in Illinois routinely disregard contractual language classifying workers as contractors or consultants" when determining employer status under the IWPCA. *Johnson v. Diakon Logistics, Inc.*, 44 F.4th 1048, 1050 (7th Cir. 2022) (citing *O'Malley v. Udo*, 198 N.E.3d 323 ¶ 48; other citations omitted). Instead, "the critical test for determining whether plaintiffs count as employees for purposes of the [IWPCA] comes from the statute rather than a contract," making a contract declaring the plaintiff to be an independent contractor is, in the Seventh Circuit's words, "irrelevant, no matter what it says." *id.*

In the SAC, plaintiffs allege that "JDM directed . . . aspects of their routes, including the times and locations to pick up trailers and loads, the specific routes they took to drive to delivery locations, and the times they were required to arrive at delivery locations. Plaintiffs did not have the opportunity to choose their own loads or routes." SAC ¶ 51. It is also reasonable to infer

8

that JDM required drivers to follow the rules in its employee manual. *See* SAC ¶ 52; SAC Ex. B., ECF No. 39-2. Viewed favorably to plaintiffs, the manual demonstrates that JDM exercised control over specific aspects of drivers' on-the-job conduct. Examples include telling drivers that they are expected not to use profanity while talking over Citizen's Band (CB) radio, a requirement that drivers call into dispatch on a daily basis, a requirement that drivers purchase fuel only from "designated fuel stops," and a rule that "[c]ontractors aren't allowed to reject any loads, or they will be charged $500." *id.* at 3.

Together, the foregoing rules in JDM's employee manual and the SAC state a plausible claim for IWPCA employer status when viewed in the light most favorable to plaintiffs. Defendants failed to discuss the ABC test or cite a case decided at the Rule 12(b)(6) stage, but the applicable test is "'much broader' than common-law tests for employee status." *Johnson*, 44 F.4th at 1052 (citing *O'Malley*, 198 N.E.3d 323 ¶ 48). Defendants' motion to dismiss the SAC's IWPCA claims is denied.

### D. Corporate Successor Liability

Tempo Freight contends that the SAC's allegations are insufficient to hold it liable as JDM's corporate successor. Kragovic/Tempo Mot. to Dismiss 5–11, ECF No. 47. The parties agree that federal common law principles of successor liability govern plaintiffs' TILA claim while Illinois law applies to their claims to impose successor liability for breach of contract and under the IWPCA.

To impose successor liability under federal common law principles, the court must be able to "find that there exists sufficient indicia of continuity between the two companies and that the successor firm had notice of its predecessor's liability." *Moriarty v. Svec*, 164 F.3d 323, 327 (7th Cir. 1998); *see also Teed v. Thomas & Betts Power Sols.*, *LLC*, 711 F.3d 763, 765–66 (7th Cir. 2013) (listing factors federal courts typically consider when analyzing successor

9

liability); *Glass v. Crimmins Transfer Co.*, 299 F.Supp.2d 878, 889–90 (C.D. Ill. 2004) (applying this test in TILA suit).

Illinois employs a more stringent test of corporate successor liability. *See Teed*, 711 F.3d at 765. "The general rule for successor liability in Illinois is that a corporation which merges with another corporation takes on the latter corporation's obligations and liabilities while a successor corporation which purchases the business assets of another corporation does not become liable for the debts of the seller in the absence of an express agreement to assume the seller's debts." *Gen. Elec. Capital Corp. v. Lease Res. Corp.*, 128 F.3d 1074, 1083 (7th Cir. 1997) (citing *Myers v. Putzmeister, Inc.*, 596 N.E.2d 754, 755 (Ill. App. Ct. 1st Dist. 1992)). The general rule has at least four exceptions. *See id.* at 1083–84. Successor liability may be imposed in the follow circumstances: "(1) Where there is an express or implied agreement of assumption; (2) where the transaction amounts to a consolidation or merger of the purchaser or seller corporation; (3) where the purchaser is merely a continuation of the seller; or (4) where the transaction is for the fraudulent purpose of escaping liability for the seller's obligation." *Moriarty,* 164 F.3d at 321 n.4 (quoting *Vernon v. Schuster*, 688 N.E.2d 1172, 1175 (Ill. 1997)). Here, plaintiffs invoke the third and fourth exceptions. *See* Jt. Resp. to Mot. to Dismiss 21–24, ECF No. 55.

Defendants point out, ECF No. 47 at 8, that the SAC does not allege the elements of Illinois successor liability in so many words. But "a plaintiff need not plead legal theories" to satisfy the federal notice pleading standard. *BRC Rubber & Plastics, Inc. v. Cont'l Carbon Co.*, 900 F.3d 529, 540 (7th Cir. 2018) abrogated on other grounds by *Schmees v. HC1.COM, Inc.*, 77 F.4th 483 (7th Cir. 2023); *See Whitaker v. Milwaukee Cty.*, 772 F.3d 802, 808–09 (7th Cir. 2014). Thus, plaintiffs' failure to recite the elements of Illinois' successor liability test does not doom the SAC. Instead, the court asks whether the SAC taken as a whole raises plaintiffs' right to relief on their federal and state successor liability theories above the speculative level. *See Iqbal*, *supra*, 556 U.S. at 678–79. To answer that question, the court disregards the SAC's

"threadbare recitals" that each successor liability factor is satisfied and considers only the SAC's well-pleaded factual allegations. *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).

Setting aside conclusory allegations, plaintiffs allege in the SAC that JDM transferred most of its assets to Tempo Freight in early 2023 after this case was filed. SAC ¶ 61. JDM retained "the same equipment and the same workforce." SAC ¶ 61. "In or about the first half of 2023, during a driver orientation for Tempo Freight Systems, one of the staff members stated that the company was JDM Expedite 'but renamed.'" SAC ¶ 67. A third company, AK Solutions, LLC ("AK Solutions"), which Kragovic (JDM's president) controls, is a member of Tempo Freight and participates in its management. *See* SAC ¶¶ 62–64. AK Solutions and Tempo Freight share a business address. SAC ¶ 63.

Tempo Freight does not discuss the foregoing allegations in its motion to dismiss. It instead focuses on the following allegations concerning transfer of assets in the SAC. *See* Kragovic/Tempo Mot. to Dismiss 7–8, ECF No. 47. According to the SAC, JDM reduced the number of "power units," referring to trucks it operates, from 215 to 5, approximately one month after this case was filed. SAC ¶ 59. Over the ensuing four months (December 2022–April 2023), Tempo Freight increased its number of trucks from 20 to 200. SAC ¶ 60. Tempo Freight contends that "[e]ven if JDM or Tempo owned any of the trucks, these allegations alone are insufficient to establish that JDM actually transferred any trucks to Tempo" because a carrier can operate a truck or "power unit" it does not own. *See* 49 C.F.R. § 376.11 (setting forth conditions for operating a truck not owned by a carrier); Kragovic/Tempo Mot. to Dismiss 6, ECF 47.

In arguing that plaintiffs have not alleged a transfer of assets, defendants ask this court improperly to draw an inference in their favor rather than in favor of plaintiffs. The applicable regulations allow carriers like JDM and Tempo Freight to own the trucks they operate or lease them. *See* § 376.11. The inference of a transfer of ownership can therefore be reasonably drawn from the SAC's allegations of a transfer of trucks between the two companies. *See* SAC ¶¶ 59–60. Alternatively, a transfer of leases can be inferred. A lease also constitutes a corporate asset. Either way, plaintiffs receive the benefit of all reasonable inferences from the SAC's well-

11

pleaded facts. *See Iqbal*, 556 U.S. at 679. With such inferences, plaintiffs have plausibly alleged that JDM transferred most of its assets, *i.e.*, trucks or leases, to Tempo Freight.

Taken in the light most favorable to plaintiffs, the foregoing allegations plausibly allege a successor liability claim against Tempo Freight that satisfies the federal common law requirements for continuity and notice to Tempo Freight, through Kragovic, of JDM's obligations. *See Moriarty*, 164 F.3d at 363; *Glass*, 299 F.Supp.2d at 889–90. The SAC also plausibly pleads grounds for holding Tempo Freight liable under the "mere continuation" exception to Illinois' general rule on corporate successor liability. Regarding that exception, in short, the allegations of common management by Kragovic and AK Solutions, coupled with the other allegations, make it plausible to find that Tempo Freight "maintains the same or similar management and ownership [as JDM] but merely wears different clothes." *Workforce Sols. v. Urban Services of Am., Inc.*, 2012 IL App (1st) 111410, ¶ 87 (quoting *Pielet v. Pielet*, 942 N.E.2d 606 (2010)). One exception to the Illinois general rule being sufficient, the court need not, and does not, decide whether plaintiffs have pleaded sufficient factual material to invoke the fraudulent transfer exception.[2] For all of these reasons, Tempo Freight's motion to dismiss plaintiff's claims for imposing successor liability upon it is denied.

### E. Kragovic's Personal Liability

As previously noted, plaintiffs do not name Kragovic as a defendant to their breach of contract claims. He argues that the SAC fails to state a claim for holding him personally liable under the TILA and IWPCA. *See* Kragovic/Tempo Mot. to Dismiss 10–14, ECF No. 47.

Starting with the TILA, the SAC charges JDM with violating truth in leasing regulations rather than the statute itself. *See* 49 C.F.R. § 376.12(g). Seventh Circuit law leaves no room to doubt that plaintiff "can sue . . . for damages from these potential regulatory violations under 49 U.S.C. § 14704(a)(2)." *Brant v. Schneider Nat'l, Inc.*, 43 F.4th 656, 678 (7th Cir. 2022)

---

[2] In particular, the court does not reach Tempo Freight's argument, made for the first time in its reply, that the heightened pleading standard of Federal Rule of Civil Procedure 9(b) applies to the fraudulent transfer exception.

12

(citing *Owner-Operator Indep. Drivers Ass'n v. Mayflower Transit, LLC*, 615 F.3d 790, 791–92 (7th Cir. 2010)). The statute giving plaintiffs a private right to sue provides, "A carrier or broker providing transportation or service subject to jurisdiction under chapter 135 is liable for damages sustained by a person as a result of an act or omission of that carrier or broker in violation of this part." 49 U.S.C. § 14704(a)(2). Plaintiffs seek to hold Kragvoic liable for aiding and abetting JDM's violations. They rely on 49 C.F.R. § 390.13, which provides, "No person shall aid, abet, encourage, or require a motor carrier or its employees to violate the rules of this chapter."

Kragovic contends that § 390.13 is inapposite because it is not directly codified in one of the truth in leasing regulations in 49 C.F.R. §§ 376.11 and 376.12. As sole support for his position, Kragovic cites dicta in a footnote in a non-binding, out-of-circuit district court decision. *See Pepper Logistics, LLC v. Lanter Delivery Sys., LLC*, 2021 WL 3725680, at *11 n.19 (E.D. Mo. Aug. 23, 2021). District courts in the Seventh Circuit, by contrast, have held that § 390.13 extends individual liability for aiding and abetting violations of the truth in leasing regulations contained in §§ 376.11 and 376.12. *See Porter v. T&T Farms, Inc.*, 2022 WL 1746927, at *4 & n.3 (N.D. Ind. May 27, 2022); *Shimko v. Jeff Wagner Trucking, LLC*, 2013 WL 10075919, at *3 (W.D. Wis. Jun. 28, 2013).

None of the cases the parties cite analyze the statutory or regulatory scheme in any depth. Neither do the parties in their briefing. Having considered the authorities the parties cite, the court finds the decisions holding that § 390.13 provides a means of enforcing the truth in leasing regulations persuasive. That reading of the regulatory scheme generally accords with the Seventh Circuit's broad interpretation of § 390.13 in another context (tort law) as "appl[ying] to a 'person' regardless of [the person']s function," be it a driver, carrier, or someone else. *Camp v. TNT Logistics Corp.*, 553 F.3d 502, 508 (7th Cir. 2009). Because the SAC adequately alleges that Kragovic aided and abetted JDM's TILA violations, his motion to dismiss the TILA claim against him is denied.

Remaining is Kragovic's contention that the SAC fails to allege a plausible joint employment claim under the IWPCA. In pertinent part, the IWPCA provides, "In addition to an

13

individual who is deemed to be an employer pursuant to Section 2 of this Act, any officers of a corporation or agents of an employer who knowingly permit such employer to violate the provisions of this Act shall be deemed to be the employers of the employees of the corporation." 820 Ill. Comp. Stat. § 115/13.  Under Illinois law, "The test for the existence of joint employers is whether 'two or more employers exert significant control over the same employees-where from the evidence it can be shown that they share or co-determine those matters governing essential terms and conditions of employment.'" *Vill. of Winfield v. Ill. State Labor Relations Bd.*, 678 N.E.2d 1041, 1044 (Ill. 1997) (quoting *Orenic v. Ill. State Labor Relations Board,* 537 N.E.2d 784, 794 (Ill. Sup. Ct. 1989).  Illinois courts conducting a joint employment analysis consider factors such as the "putative joint employers' role in 'hiring and firing; promotions and demotions; setting wages, work hours, and other terms and conditions of employment; discipline; and actual day-to-day supervision and direction of employees on the job.'" *Id.* (quotation omitted).  No factor carries dispositive weight; however, "the most important single factor is the right to control the work." *Starr Indem. & Liab. Co. v. Tech. Ins. Co., Inc.*, 462 F.Supp.3d 877, 885 (N.D. Ill. 2020) (citing *Kay v. Centegra Health Sys.*, 40 N.E.3d 152, 156 (Ill. App. Ct. 2d Dist. 2015)).

Kragovic argues that the SAC's joint employment allegations fail because they are based on the sole fact that he was JDM's President.  *See* Kragovic/Tempo Mot. to Dismiss 13–14, ECF No. 47.  Plaintiffs respond that the following two paragraphs of the SAC adequately allege that Kragovic knew about and acquiesced in JDM's alleged practice of making improper deductions from plaintiffs' payments:

> 57.  Defendant Aleksandar Kragovic had authority over JDM's policies and practices with regard to paying IWPCA Plaintiffs.
>
> 58.  Defendant Kragovic was aware of and permitted the unauthorized deductions from IWPCA Plaintiffs' paychecks.  He had the authority to stop the deductions but did not do so.

SAC ¶¶ 57–58 cited in Jt. Resp. Mot. to Dismiss at 27, ECF No. 55.

Read in context, the foregoing paragraphs stand as conclusory allegations bereft of well-pleaded supporting facts. A job title does not by itself suffice to state a plausible joint employment claim against an officer of a corporation that employed the plaintiff. If it did, the joint employment test would effectively become a strict liability regime for corporate officers. *See, e.g.*, *Gibbs v. ABT Elecs., Inc.*, 2022 WL 16540182, at *4 (N.D. Ill. Oct. 28, 2022.). Without more, Kragovic's title shows theoretical, rather than *de facto*, control, and "joint employer status does not turn on theoretical control over the terms and conditions of employment." *Am. Fed'n of State, Cnty. & Mun. Employees, Council 31 v. State Labor Relations Bd.*, 839 N.E.2d 479, (485 Ill. 2005). As plaintiffs point to no other allegations in the SAC making their IWPCA joint employment claim plausible, the IWPCA claim against Kragovic pleaded in the second amended complaint is dismissed.

## IV. Conclusion

For the reasons stated, defendants' motions to dismiss the second amended complaint are granted in part and denied in part. Count III of the second amended complaint is dismissed against defendant Kragovic only. The court denies all other relief requested in defendants' motions to dismiss the second amended complaint.

Dated August 16, 2024 /s/ Joan B. Gottschall
United States District Judge

15